Froessel, J.
Plaintiffs administrators brought two separate actions in the Supreme Court, Onondaga County, to recover damages for the wrongful deaths of their respective intestates, John Venturini and Douglass P. Petell. Petell and Venturini were passengers in an automobile driven by one Michael A. O’Rourke, a resident of New Hampshire, and were killed when the car went off the road near Sennett, New York, about 3:30 a.m. on the morning of September 7, 1951. It is conceded for purposes of this appeal that the car was jointly owned by defendants Orville E. Sellers, a resident of Pennsylvania, and his son, Donald E. Sellers, and neither defendant was in the car at the time of the accident. The father had given the car to his son to take with him to Sampson Air Force Base near Geneva, New York, where Donald was stationed as a member of the *291 U. ¡3. Air Force. A public liability insurance policy covering the car had been issued in the State of Pennsylvania by National Surety Company, which policy contained the usual omnibus clause insuring, in addition to the named insured, any person using the automobile “ with his permission ”.
Prior to the commencement of the instant actions, the present plaintiffs had instituted actions against O’Rourke in New Hampshire, but the insurer refused to defend the actions on the ground that O’Rourke was not operating the car with the permission of the named insured. In accordance with New Hampshire procedure, plaintiffs then brought a declaratory judgment action against O’Rourke and National Surety Company, seeking a declaration that it was the duty of the insurer to defend the actions. After hearing testimony by defendant Donald Sellers and two other witnesses, and reading the deposition of O’Rourke, the New Hampshire Superior Court adopted elaborate formal findings of fact, setting forth the substance of the evidence and its conclusions therefrom in great detail. The court found that “ On the afternoon of September 6, 1951, Petell asked Donald Sellers if he could borrow his ear and upon Sellers inquiring who was going with him he informed him that O’Rourke was going, whereupon Sellers informed him he would not lend him the car if 0 ’Rourke was going with him in view of O’Rourke’s restriction. Some time later, Sellers and two other air force flight instructors, Philip B. Kennicutt and Robert M. Danek, were in the room of Kennicutt on the first floor of Barracks H43, where O’Rourke also had a room on the first floor and Sellers and Danek had a room on the second floor. The plaintiff decedent, John P. Venturini, came into the room bringing a note from Petell asking again for the loan of the car. Sellers refused the loan of the car again upon being told that O’Rourke was going with Petell. Shortly after that, Venturini returned again and informed Sellers that O’Rourke was not going but another man by the name of Tempo would accompany them in O’Rourke’s place. They had previously informed Sellers that they were going to the State Fair at Syracuse. Sellers gave the keys to Venturini to give to Petell thereby giving permission to Petell to take the car accompanied by Venturini and Tempo.” The court further found that O’Rourke, and not Tempo, accompanied Petell and Venturini in the Sellers *292 automobile, and that at the time of the accident O’Rourke was driving the car.
After making its formal findings of fact, the Superior Court transferred the questions of law involved in the case to the Supreme Court of New Hampshire without ruling on them. In answer to the certified questions, the Supreme Court held, insofar as pertinent, that the question of coverage under the policy was governed by Pennsylvania and not New York law since the policy had been issued in Pennsylvania, and that the actual use of the automobile at the time of the accident was not with the insured’s permission “within the interpretation put upon that language by the laws of Pennsylvania ”. The ground for the latter holding was that “ The particular use to which the car was being put, insofar as it was being driven by 0 ’Rourke and used for his transportation, was neither actually nor impliedly within the limits of the permission granted by Sellers to Petell. Unlike the situation in Arcara v. Moresse, 258 N. Y. 211, where the thing forbidden related to the operation of the vehicle, the limitation upon the permission given in this case was that the car should not he used at all if O’Rourke was a passenger. ” (99 N. H. 378-379; emphasis supplied.)
A final judgment was accordingly granted, declaring that, since there was no permission within the meaning of the policy, the insurer was not obligated to defend the actions against O ’Rourke. The actions against 0 ’Rourke were then voluntarily discontinued. After the New Hampshire trial court made its findings of fact, plaintiffs commenced the instant actions in New York against Orville and Donald Sellers as co-owners of the automobile. The complaint in each action alleged that the automobile was being operated at the time of the accident “with the permission, express or implied”, of the defendants. The answer pleaded as an affirmative defense that the final judgment in the New Hampshire declaratory judgment action was a conclusive determination of the issue of permissive use, and a complete record of the New Hampshire proceedings was annexed to the answer. Defendants moved for summary judgment, and Special Term granted the motion on the ground “ that the judgments in New Hampshire are conclusive and bar recovery by plaintiffs in New York ”, Although the Appellate Division conceded'that “ In view of the relationship of indemni *293 tor and indemnitee "between the insurance company and the defendants, the prior judgment in favor of the insurance company may be used defensively by the defendants (Israel v. Wood Dolson Co., 1 N Y 2d 116; Good Health Dairy Prods. Corp. v. Emery, 275 N. Y. 14) ” (5 A D 2d 446), it reversed on two grounds: (1) The issue of permission under the insurance policy — which was determined “asa matter of contract law in accordance with the intention of the parties to the contract under the law governing the contract ” — was different from the issue of permission under section 59 of the New York Vehicle and Traffic Law, which latter issue ‘ ‘ must be determined in accordance with the intent of the Legislature, taking into account the policy objectives which the Legislature sought to carry out (2) Under the law of New Hampshire, which was found to be the same as the law of New York, the doctrine of collateral estoppel ‘ ‘ is not applicable to evidentiary findings made in a prior action involving a different ultimate issue
While we agree with the Appellate Division that the ultimate legal issue involved in the instant case is not the same as the ultimate legal issue involved in the New Hampshire action, we disagree with its application of the collateral estoppel doctrine. It was found as the fact in the New Hampshire action that “ the limitation upon the permission given in this cage was that the car should not be used at all if O’Rourke was a passenger ”. This was not a fragmentary finding of an evidentiary fact, as the Appellate Division implied, but was a finding essential to the judgment, from which the resolution of the ultimate legal issue necessarily followed. It is perfectly clear from the record of the New Hampshire proceedings that the quoted factual finding was a necessary step in arriving at the final judgment, and, as Judge Learned Hand noted in Evergreens v. Nuna (141 F. 2d 927, 928, cert, denied 323 U. S. 720), “ It is of course well settled law that a fact, once decided in an earlier suit, is conclusively established between the parties [or their privies] in any later suit, provided it was necessary to the result in the first suit.” (See, also, People ex rel. McCanliss v. McCanliss, 255 N. Y. 456, 459-460.)
The resolution of the ultimate legal issue in the instant actions also necessarily follows from the quoted factual finding of the New Hampshire courts since, if the limitation upon the permission given was that the car should not be used at all if 0 ’Rourke *294 was a passenger, there can be no recovery by plaintiffs under section 59 of the Vehicle and Traffic Law (Arcara v. Moresse, 258 N. Y. 211; Psota v. Long Is. R. R. Co., 246 N. Y. 388). In other words, in order to succeed in these actions, plaintiffs would have to prove that the scope of the permission granted included the presence of O’Rourke as a passenger. They “ had a full opportunity to prove ” that fact “ in a court of competent jurisdiction ”, and, since the court found otherwise, plaintiffs “ may not relitigate that issue ” (Israel v. Wood Dolson Co., 1 N Y 2d 116, 120). The operative facts relating to “ permission ” are exactly the same in these actions as they were in the New Hampshire action and, since plaintiffs had a full and complete opportunity to be heard on these facts in New Hampshire, they should not be permitted to relitigate them in New York simply because the legal issue of permission here appears in the context of a New York statute rather than in a Pennsylvania insurance policy. The doctrine of collateral estoppel ‘ ‘ is essentially a rule of justice and fairness ”, and the essence of the rule is ‘ ‘ that a question once tried out should not be relitigated between the same parties or their privies ” (Commissioners of State Ins. Fund v. Low, 3 N Y 2d 590, 595).
While the decision in Fox v. Employers’ Liab. Assur. Corp. (239 App. Div.,671) (the only one of three related cases involving the same subject matter which was not appealed to this court) seems to support the position adopted by the Appellate Division here, we feel that that case was wrongly decided. In the first Fox case (231 App. Div. 273, affd. 258 N. Y. 550), the situation was the reverse of that presented here, i.e., the first action was against the owner of the car under section 59 and the second action against the' insurance company under the policy. Plaintiffs recovered a judgment in the trial court against the City of Syracuse and one Green, a city employee, for injuries received •in the negligent operation of a city automobilé by Green. On appeal by the city, whose defense had been conducted by counsel for its insurance company, the judgment against it was reversed on the ground that Green was using the car for his own purposes at the time of the accident, and not on city business, and that the city, a municipal corporation, was legally incapable of consenting to the use of the ear for pleasure purposes so as to subject it to liability under section 59.
*295 After an execution issued against Green was returned wholly unsatisfied, plaintiffs commenced an action against the city’s insurance company to recover under the policy, and the latter pleaded the prior judgment as res judicata. This defense was sustained by the trial court but overruled by the Appellate Division on the ground that the issue of ‘ ‘ permission ’ ’ under section 59 was not the same as the issue of “ permission ” under the policy. While we agree with this conclusion as to the non-identity of the ultimate legal issues, the Appellate Division erroneously noted: “ Nor was there privity or any other relationship there which estops plaintiffs here ” (239 App. Div., supra, p. 675).
On the subsequent trial of the action, plaintiffs recovered judgments against the company, but these were reversed on appeal on the ground that plaintiffs had failed to prove that Green was legally operating the car in the business of the city, with its express or implied consent — a prerequisite to recovery under the policy (243 App. Div. 325,-affd. 267 N. Y. 609).
In the instant case, the Appellate Division correctly held that by virtue of the indemnitor-indemnitee relationship existing between an insurer and an insured, defendant here (the insured) was in privity with the defendant in the New Hampshire action (the insurer) for purposes of the collateral estoppel doctrine. The Appellate Division erred in the Fox case in not according collateral estoppel effect to the finding that Green was using the car for purposes to which the city could not, in law, consent. The finding that the city employee was using the car for pleasure purposes at the time of the accident was essential to the judgment exonerating the city from liability under section 59 and, if the named insured was incapable of consenting to the use of the car for these purposes, the insurer could not be liable under the policy. We recognized this, in effect, in affirming the subsequent judgment for the insurance company, and hence we do not regard the Fox case as authority for denying collateral estoppel effect to the necessary factual finding made in the New Hampshire proceeding.
As to the conflict-of-laws question involved in this case, the Appellate Division, citing Johnson v. Muelberger (340 U. S. 581), held that “ the law of New Hampshire, rather than the laiv of New York, is controlling as to the effect to be given the eviden *296 tiary findings underlying the New Hampshire judgment ’ Since the issue of permission under the insurance policy, as determined under Pennsylvania law, is not the same as the issue of permission under section 59 of the Vehicle and Traffic Law, no adjudication by the courts of New York on the latter issue could impair the force of the New Hampshire judgment on thé former issue. Hence a choice of New Hampshire law would not appear to be mandated by the Pull Faith and Credit Clause of the Federal Constitution. It should also be noted that the accident occurred in New York, and since the liability of the insurer is, by force of our statute (Vehicle and Traffic Law, § 59), deemed coextensive with the liability of the insured owner to third persons for injuries caused by those operating the vehicle with the said insured’s permission, the ultimate liability of the insurer depends upon a construction of New York law.
In any event, the relevant New Hampshire cases seem to be in accord with the general rule that where an issue of fact essential to the judgment is actually litigated and determined by a valid final judgment, the determination is conclusive between the parties and their privies (King v. Chase, 15 N. H. 9; Laconia Nat. Bank v. Lavallee, 96 N. H. 353; see, also, Morin v. Travelers Ins. Co., 85 N. H. 471; Employers’ Liab. Assur. Corp. v. Tibbetts, 96 N. H. 296).
The orders appealed from should be reversed, and the judgments of Special Term reinstated, with costs. The question certified in each case should be answered in the affirmative.