Gabrielli, J. (dissenting).
I respectfully dissent from the majority decision. Respondent-appellant Aetna Casualty and Surety Co. appeals from an order of the Appellate Division, First Department, which affirmed a judgment of Supreme Court, New York County. The order appealed from strikes Aetna’s allegation of disclaimer of coverage, and orders Aetna to appear and defend in an action for personal injuries instituted by American’s insureds, the Messingers, against Aetna’s insured, Zook.
To place the present controversy in proper perspective, it is important to here note, and indeed to emphasize, that this personal injury action, arising from an automobile collision, was instituted by the insured owners and the operator of one vehicle against the insured owner of another vehicle involved in the accident; and that this action was begun prior to the commencement of an arbitration proceeding, involving only a *195 property damage claim, which was strictly between the two insurers; and that the insureds were not only not parties to this subsequent arbitration, but that they in no way participated, directly or indirectly, in that proceeding. In fact, there is no evidence that they were even aware of its existence.
The facts, although complex, are undisputed. On May 31, 1972, the Messingers were involved in an automobile accident with a car owned by Zook; soon thereafter, they commenced an action against Zook to recover for personal injuries. Aetna, Zook’s insurance company, was not notified of the action until April 23, 1973, and on August 10, 1973, Aetna disclaimed on the grounds of late notice and lack of cooperation. In the interim, American had paid their insureds, the Messingers, $4,704.51 for property damage to their automobile, and on August 1, 1973 had requested arbitration against Aetna seeking to recover this sum as subrogee. The arbitration request was made and the arbitration conducted pursuant to the Nationwide Inter-Company Arbitration Agreement. Aetna objected to arbitration on September 26, 1973, on the ground that its insured had not complied with the co-operation provisions of the policy.
It should be noted that this arbitration was between the insurers only, and none of the insureds were considered to be in any way interested in the outcome. The arbitration itself was a very simple process; the two companies merely sent the arbitrators their files. These files are not in the record, and it appears that they are not in fact retained after the arbitration. Thus, there is apparently no way of determining» what material was before the arbitrators. It is important to note that there was no hearing. On January 11, 1974, the panel rendered a decision, stating simply: "Questions of coverage considered. Applicant sustained burden of proof against [Aetna] in amount of $1,201.12”.
On June 13, 1974, the Messingers made a demand against American for uninsured motorist arbitration with respect to their personal injury claims because of the August 10, 1973 disclaimer by Aetna. American successfully sought a stay of arbitration in order to challenge the disclaimer, and subsequently obtained a judgment striking the disclaimer by virtue of the collateral estoppel effect of the arbitration decision. This appeal is taken from the Appellate Division’s affirmance of that judgment, by leave of that court.
Although it is certainly not dispositive, it should be noted *196 that neither party now seeks affirmance. Apparently influenced by the allegedly destructive impact of an affirmance upon the complex system of arbitration utilized by the insurance industry, both insurance companies and the Committee on Insurance Arbitration now urge reversal.
Preliminarily, I take issue with the majority’s attempt to avoid application of the principles enunciated by this court in Schwartz v Public Administrator of County of Bronx (24 NY2d 65), by limiting the discussion in Schwartz to situations wherein the parties to both actions are not the same. The unfortunate result of today’s decision will be to disturb the uniform theory of res judicata and collateral estoppel which we perfected in that case. It should be noted that whether one uses the traditional terminology or the new nomenclature utilized in the tentative drafts of the Restatement, Judgments (2d), the concepts remain unchanged. Traditionally, collateral estoppel has been considered as merely one category of res judicata, a type of partial res judicata. It is distinguished from full res judicata, not on the basis of the parties involved in the respective actions, but on the basis of the nature of the two actions. Res judicata is applicable to bar a subsequent action when a prior suit on the same cause of action has been finally determined on the merits: if the plaintiff has fully recovered, he is precluded from commencing another action by the doctrine of merger; if the defendant has prevailed on the merits, the plaintiff is precluded from commencing another suit by the doctrine of bar. Collateral estoppel, or partial res judicata, precludes relitigation in subsequent actions of questions actually litigated and determined in a prior suit, even if that prior suit was based on a different cause of action. Direct estoppel, in. contradistinction, is applicable to prevent relitigation of previously determined questions in situations where the prior judgment itself was not on the merits.* **§The effect of the new Restatement is simply to recast these familiar concepts in a new terminology. Thus, section 45 distinguishes between bar and merger on the one hand (claim preclusion or res judicata), and issue preclusion (collateral estoppel) on the other. Direct estoppel has apparently been subsumed within *197 the concept of issue preclusion. In the present case, it is clear that we are faced with what has traditionally been considered a question of collateral estoppel, and what may now be termed a question of issue preclusion: that is, the effect, in a personal injury action between two insureds, of a determination in a prior property damage arbitration proceeding between their respective insurers, that a disclaimer of coverage is ineffective.
In refusing to apply the Schwartz criteria on the ground that in that case the parties to the two actions were not both the same whereas in the present case they are, the court misstates the significance of Schwartz. There, we were not concerned with developing a new classification of res judicata or collateral estoppel applicable only in cases where someone not a party to a prior action attempts to preclude relitigation of an issue already determined in that prior action; rather, we were simply extending the normal principles of res judicata and collateral estoppel to such situations. Thus, our discussion of the criteria for applying res judicata or collateral estoppel was not limited to the Schwartz fact pattern, but was, to the contrary, an exposition of basic principles. Indeed, we declared therein that the effect of our decision would be that "New York law will have arrived at a modern and stable statement of the law of res judicata” (Schwartz, supra, p 69).
Today’s decision, in contrast, heralds the disruption of that system. It apparently holds that the analysis and principles used in determining whether collateral estoppel is applicable will vary depending on whether the parties to the two actions are the same. This is an abrupt departure from precedent, which, until today, betokened an increasing reliance solely on the question whether the party against whom the estoppel is sought to be used has had "a full and fair opportunity to contest” the prior decision (see Schwartz, supra, p 71; B. R. DeWitt, Inc. v Hall, 19 NY2d 141, 145-146; Good Health Dairy Prods. Corp. v Emery, 275 NY 14, 18; Liberty Mut. Ins. Co. v Colon & Co., 260 NY 305, 312). This is not to say, of course, that the identities of and relationships between the parties are not to be considered in determining whether the application of issue preclusion is appropriate. As I will discuss below, these are very important factors in that determination; nonetheless, they are not dispositive, but are only some among many factors. Above all, although the result of this determination may in certain cases vary as a result of the relationship between the parties, the analysis and principles to be utilized *198 in arriving at that result certainly should not so vary. Therefore, in the hope that today’s, decision is but a temporary aberration, and that the court will soon return to the stable system we have developed in prior cases, I will discuss the present case within the framework of a uniform theory of collateral estoppel or issue preclusion.
As I mentioned above, the seminal New York decision concerning collateral estoppel is Schwartz v Public Administrator of County of Bronx (24 NY2d 65, supra). There, this court held that a prior judgment in favor of a passenger against the drivers of two colliding automobiles gave rise to an estoppel which could be used by one driver to bar an action against him brought by the other. To reach this result, we specifically adopted "the full and fair opportunity test in applying the doctrine of collateral estoppel” (id., p 71). That test was described as follows (p 72): "A decision whether or not the plaintiff drivers had a full and fair opportunity to establish their nonnegligence in the prior action requires an exploration of the various elements which make up the realities of litigation. A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation”.
In the present case, the courts below held that Schwartz mandates application of collateral estoppel. I disagree. This is not to say that collateral estoppel is not normally applicable to arbitrations. The Schwartz rationale, however, comprehends a flexible approach to collateral estoppel, a balancing of the various factors enumerated above to determine whether the doctrine should be applied in a particular situation. In making this determination, moreover, it is necessary to consider the purpose of collateral estoppel—the prevention of repetitive litigation. "[C]are must be taken to restrict collateral estoppel to those situations in which the advantages to be derived from preventing relitigation will not be outweighed by the injustice that may result by foreclosing attack on prior determinations” (Developments in the Law-Res Judicata, 65 Harv L Rev 818, 840). Indeed, as we stated in Schwartz, "[n]o *199 one would contend that the doctrine of collateral estoppel should be applied rigidly” (Schwartz, supra, p 73).
Analysis of the present case in light of the Schwartz criteria leads to the conclusion that this is not such a situation as to warrant an estoppel. The first consideration is the size of the claims in the two proceedings. In this case, the prior arbitration concerned a property damage claim of under $5,000, whereas the personal injury action may subject the insurer to a much greater liability. In reaching our decision in Schwartz, we carefully noted that the prior action there "did not involve claims for property damage amounting to but a few hundred dollars so that there would be no assurance that there was a vigorous fight on the issue of liability” (Schwartz, supra, p 72). It appears that the present case is in fact that which was distinguished in Schwartz. Indeed, this is further indicated by consideration of another Schwartz factor, the possibility that the prior judgment was a compromise. The insurance arbitration scheme in the present case has all the earmarks of a plan aimed at achieving just such a compromise. This is exemplified by the award itself; instead of the $4,704.51 requested by American, and which it had presumably already paid to its insured, the arbitrators awarded the apparently arbitrary figure of $1,202.12.
The arbitration proceeding involved no hearing, no calling of witnesses (none of the insureds participated nor did they have notice of the hearing), no briefs, no argument by representatives of either side; rather, it constituted merely a perusal of the files of the two companies, files not in the record, and files which apparently are not maintained after the arbitration. The award itself is vague—it consists of the bald statement that "questions of coverage [were] considered” and the award of an amount which appears to have been drawn out of a magician’s hat.
More significantly, it seems evident that it was not the intent of the parties to the arbitration agreement that it be given any collateral estoppel or res judicata effect other than with respect to the property damage award itself. The agreement is limited to property damage claims of under $5,000; by specific contract provision it is not to be utilized until all related claims or controversies are settled; again by contract, it does not involve the interests of the insurqds at all, and they are not even parties to the arbitration. In view of these provisions, it appears clear that neither party intended any *200 estoppel effect. Rather, every effort was made to ensure that no opportunity for an estoppel would arise. Indeed, the property damage claim in the present case was actually submitted to the arbitrator erroneously: both insurance companies were under the mistaken belief that no other claim existed. American, the company which instituted the arbitration and which now seeks to give it collateral estoppel effect, incorrectly declared in its application for arbitration that no companion claims or other suits were pending. Certainly, the insured cannot be affected or bound by any error on their part. I shudder to think of possible collusion. There exists, moreover, another arbitration agreement specifically designed to provide a specialized forum for deciding whether a disclaimer is effective as between two insurance companies—the New York Uninsured Motorist Arbitration Agreement.
In interpreting an arbitration agreement, as in interpreting any contract, a court seeks to determine the intent of the parties as of the time they entered into the agreement. I believe this contract was carefully constructed so as to avoid the possibility of any unexpected collateral estoppel effect. Although the testimony of the parties as to what their intent was is not conclusive, it should nonetheless be considered if the intent is not clear from the face of the agreement. Here, I think the intent is clear. Even if the agreement is considered to be somewhat ambiguous, we have before us the statements of both parties and of the Committee on Insurance Arbitration, the body charged with interpreting and administering the agreement. All agree that the intent was to prevent estoppel from attaching. Under these circumstances, I do not think it would in any way limit Schwartz were we to find that no estoppel attached.
Indeed, to apply estoppel here does not further the purposes of the doctrine. Rather than preventing relitigation of issues already decided and the concomitant waste of both judicial effort and the time and money of the litigants, the effect of applying collateral estoppel here is to disrupt an effective and complex system of arbitration and thereby place upon the courts the additional burden of deciding innumerable disputes concerning small claims which are presently resolved via arbitration. Clearly, no insurance company will submit even a minor property damage claim to arbitration if it must fear that the results of that arbitration may return to haunt it in a subsequent personal injury action involving substantially *201 higher amounts. We are here dealing with a system which provides a means of settling small disputes expeditiously and inexpensively. I see no reason to chance destroying the effectiveness of this system. It should be noted that a reversal here would not undermine in any way the res judicata effect to be afforded arbitral awards, nor would it limit the collateral estoppel effect of an arbitration conducted under an agreement which does not clearly indicate an intent that no estoppel attach. Thus, I believe reversal is appropriate under these circumstances.
Conspicuously absent in the present appeal, and, indeed, in most of this dispute, are the parties around whom it revolves —the insureds. Since the majority has affirmed, all insureds will in effect win in this case: Aetna will be unable to disclaim, Zook is insured, and the Messingers need not fear the possibility of being limited to their uninsured motorist benefits. If we had reversed, Aetna would have had an opportunity to litigate fully the question of the effectiveness of its disclaimer by traditional evidentiary means in an appropriate forum. If the disclaimer were then invalidated, the result would have been the same as it now is; if, however, the disclaimer were determined to be effective, Zook would not be insured and the Messingers would effectively be limited to their uninsured motorist coverage, which may be as little as $10,000 (see Insurance Law, § 167, subd 2-a). It is obvious that the interests of the insureds and their insurers are inextricably entangled in this situation. They are at one and the same time united in some aspects and adverse with respect to others. Although we have soundly rejected the doctrine of mutuality of estoppel, characterizing it as "a dead letter” (B. R. DeWitt, Inc. v Hall, 19 NY2d 141, 147, supra), this does not mean that we can simply ignore the complex relationship between the various parties in this case. What would have been the result had the arbitrators upheld the disclaimer? What will be the result if American seeks to give collateral estoppel effect not to the implicit finding that the disclaimer was ineffective, but rather to the equally implicit finding that Aetna’s insured was responsible for the accident? This is not the typical arbitration, in which the parties to the arbitration are the real and sole parties in interest. It is rather an attempt to settle between the insurers, the question of which company shall bear the burden of paying relatively minor property damage claims. It is an attempt to quickly resolve *202 those minor claims of which it could truly be said that it is more important to all concerned that they be soon resolved than that they be correctly resolved. To give such a determination a collateral estoppel effect in subsequent litigation of much greater import to the parties is to give it an effect and a significance never intended by the parties, and one which may substantially impair the effectiveness of a complex arbitration agreement encompassing some 600 insurance companies.
Accordingly, the order of the Appellate Division should be reversed, without costs.
Chief Judge Breitel and Judges Jasen and Wachtler concur with Judge Jones; Judge Gabrielli dissents and votes to reverse in a separate opinion in which Judges Fuchsberg and Cooke concur.
Order affirmed.

 Restatement of Judgments, § 45, Comments c, d; § 68. See Developments in the Law—Res Judicata, 65 Harv L Rev 818, 820, n 1; Rosenberg, Collateral Estoppel in New York, 44 St John’s L Rev 165, 166; 9 Carmody-Wait 2d, NY Prac, Judgments, § 63:196, n 18; cf. Hinchey v Sellers, 7 NY2d 287, 293-294; Commissioners of State Ins. Fund v Low, 3 NY2d 590, 595-596.