THE PEOPLE OF THE STATE OF NEW YORK ex rel. LEE McCANLISS, Appellant, v. IRENE McCANLISS, Respondent.

(Argued January 7, 1931; decided February 10, 1931.)

*Harold W. Bissell* for appellant. A habeas corpus proceeding by a father for custody of his infant son is not barred by the prior pending action brought by him to annul his marriage on the ground of fraud. (*Queens County Co.* v. *O'Brien,* 131 App. Div. 91; *Finlay* v. *Finlay,* 240 N. Y. 429; *Davis* v. *Davis,* 75 N. Y. 221; *People ex rel. Brooks* v. *Brooks,* 35 Barb. 85; *People ex rel. Sternberger* v. *Sternberger,* 12 App. Div. 398; 153 N. Y. 684; *People ex rel. Winston* v. *Winston,* 31 App. Div. 121; *Matter of Mather,* 140 App. Div. 478; *People ex rel. Watson* v. *Buffett,* 75 App. Div. 365; *Simon* v. *Simon,* 6 App. Div. 469; 159 N. Y. 549; *Kamman* v. *Kamman,* 167 App. Div. 423; *Hedden* v. *Hedden,* 178 App. Div. 957; *Chamberlin* v. *Chamberlin,* 193 App. Div. 784; *Haas* v. *Haas,* 197 App. Div. 619; *McCracken* v. *McCracken,* 217 App. Div. 673; *Stillman* v. *Stillman,* 240 N. Y. 268; *National Fire Ins. Co.* v. *Hughes,* 189 N. Y. 84; *Consolidated Co.* v. *Wisner,* 38 App. Div. 369; *Burke* v. *Betts,* 126 Misc. Rep. 601; *Watson* v. *Jones,* 13 Wall. 679; *People ex rel. Duryee* v. *Duryee,* 188 N. Y. 440; *People ex rel. Riesner* v. *Hospital,* 230 N. Y. 119.) Appellant has adopted the procedure prescribed by law to obtain custody of his child. (*Matter*

*of Lee,* 220 N. Y. 532; *Matter of Leggat,* 47 App. Div. 381; 162 N. Y. 437; Domestic Relations Law, § 70; *People ex rel. Riesner* v. *Hospital,* 230 N. Y. 119; *Finlay* v. *Finlay,* 240 N. Y. 429; *People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559; *McCanliss* v. *Morschauser,* 225 App. Div. 692; *People ex rel. Corkran* v. *Hyatt,* 172 N. Y. 176; *People ex rel. Ledwith* v. *Board,* 238 N. Y. 403; *People ex rel. Perkins* v. *Moss,* 187 N. Y. 410; *People ex rel. Stabile* v. *Warden,* 202 N. Y. 138; *People ex rel. Bullock* v. *Hayes,* 215 N. Y. 172; *People ex rel. Brinkman* v. *Barr,* 248 N. Y. 126; *People ex rel. Farrington* v. *Mensching,* 187 N. Y. 8.)

*Frederick C. McLaughlin, John Reynolds* and *Wilder Goodwin* for respondent. The remedy of habeas corpus was not available to the appellant. (*Jones* v. *Brinsmade,* 183 N. Y. 258; *Sorenson* v. *Sorenson,* 122 Misc. Rep. 196; *Murphy* v. *Murphy,* 194 App. Div. 395; Eversley on Domestic Relations [4th ed.], 590; *People* v. *Kling,* 6 Barb. 366; *People* v. *Landt,* 2 Johns. 375; *Matter of Doyle,* Clarke, 157; *Finlay* v. *Finlay,* 240 N. Y. 429; *Matter of Standish,* 197 App. Div. 176; 233 N. Y. 689; *Davis* v. *Davis,* 75 N. Y. 221; *People ex rel. Klee* v. *Klee,* 202 App. Div. 592; *Matter of McDevitt,* 101 Misc. Rep. 588; *Horner* v. *United States,* 143 U. S. 570; *People ex rel. Doyle* v. *Atwell,* 232 N. Y. 96; *Matter of Delano,* 37 Mo. App. 185.)

.CARDOZO, Ch. J. The relator and the respondent were married in April, 1923, and lived together as husband and wife till December, 1927.

The month following the separation, the husband began an action against his wife for the annulment of the marriage. He complained that fraudulent representations had been made to him as to her origin, her legitimacy and the moral character of her parents. The wife appeared and answered.

Three months later, the relator sued out a writ of habeas corpus under section 70 of the Domestic Relations

Law (Cons. Laws, ch. 14), to determine the custody of a child, the offspring of the marriage, a boy of four years. He alleged in his petition that the child was in danger of being corrupted in morals if permitted to remain in the custody of the mother.

Upon the return to the writ, the respondent made the objection that the relator could not maintain the proceeding while the annulment suit was pending, and that by the bringing of that suit he had made an election of his remedy and was barred from any other. The objection was overruled, the court directing the parties to litigate the merits. By immemorial tradition the aim of habeas corpus is a justice that is swift and summary. If that be the aim, there was here a signal failure to attain it. The proceeding lasted for two years. There were thirty-two hearings, at which testimony was given by forty-nine witnesses, with the result that the printed record now before us covers five large volumes or over 3,100 pages. At the end, the trial judge, instead of confining himself to an order, the usual practice in such proceedings, made elaborate findings, 209 in number. He not only found against the wife in respect of all the charges made against her by the husband in the action for annulment. He even found against her as to a defense pleaded in that action to the effect that the husband had cohabited with her after knowledge of the fraud. The false representations may have had a bearing, though not of necessity a controlling one, upon the fitness of a mother to have the custody of this little boy, and even perhaps upon her fitness to divide it with the father. By this we do not mean to say that any finding of the fraud that is made in this proceeding will be proof in favor of the husband in his action to annul the marriage. Findings of evidentiary facts though germane to the proceeding in which they have been made, are not always conclusive in another as part of the thing adjudged (*Campbell* v. *Consalus*, 25 N. Y. 613; *Silberstein*

v. *Silberstein*, 218 N. Y. 525, 528; *Mehlhop* v. *Central Union Trust Co.*, 235 N. Y. 102, 108). All that is in issue in this proceeding, the ultimate fact to be determined, is the apportionment of custody between the father and the mother (Freeman on Judgments [5th ed.], vol. 2, § 829). For the determination of that issue, some of the facts recited in the findings are not even evidentiary. They are foreign to the controversy, and should have no place in the decision. Not by any stretch of imagination was it necessary in determining the custody most beneficial to the child to pass upon the merits of the defense of condonation.

The findings of fraud in the inducement of the marriage must not be thought, however, to exhaust the case for the relator. They are accompanied by others, which, if supported by the evidence, have a closer relation to the welfare of the infant. The respondent was not charged with adultery, and the judge made it plain by his decision that there was not even cause for suspicion that she had been guilty of that offense. He found, however, that she professed immoral views as to the relations between the sexes and the duty of marital fidelity. He found that some of her associates were persons of loose morals and of corrupting habits of speech, and in particular that there had been a willful exposure of the child to contaminating contact with a man of evil life. The upshot was an order whereby the boy was given over to the custody of his father, the mother being given the privilege of visiting him between the hours of four and six on Monday of each week, and not even then if the child was at school or on vacation.

There was an appeal to the Appellate Division. That court reversed the order upon the law and dismissed the proceeding. It said in its opinion that at the time of the petition for the writ there was pending an action for the annulment of the marriage; that the husband had prayed n his complaint for an adjudication as to the custody

of the child; and that " in face of the pendency of the annulment suit, in which judgment awarding the custody of the child to the respondent is sought, the habeas corpus proceeding should have been dismissed."

We are unable to give assent to the holding that the action for the annulment of the marriage is a bar to a proceeding by habeas corpus for a determination, · as between the parents, of the custody of a child (Domestic Relations Law, § 70).

The rights and wrongs of the contending spouses will be the decisive considerations in the action for annulment. In the proceeding by habeas corpus the supreme consideration is the welfare of the infant (*Finlay* v. *Finlay*, 240 N. Y. 429, 431; *People ex rel. Riesner* v. *New York N. & C. Hospital*, 230 N. Y. 119, 124). The conclusion is unthinkable that a child subject to immoral influences must be left in the corrupting custody while father and mother debate their private grievances. There was ample power in the Appellate Division to deal with the controversy according to its conception of the merits. If the custody was not corrupting, it might have reversed or modified the order. Conceivably, it might have reversed in the exercise of its discretion if the danger was not imminent, with the result that the adjudication of the custody could be postponed without prejudice until the termination of the action. It did nothing of the kind. Without passing upon the merits either to approve or to disapprove the conclusion of the trier of the facts, it dismissed the whole proceeding on the ground that the pending action was a bar. For all that we can know at this time, the husband, when he proceeds to the trial of the action of annulment, will fail in his attempt to invalidate the marriage. If his complaint shall be dismissed, there will be no power in that action to adjudicate the custody (Civ. Pr. Act, § 1140; *Stillman* v. *Stillman*, 240 N. Y. 268; *Finlay* v. *Finlay*, *supra*). A new writ will have to issue with a renewal of the contest, for the failure of the charge of fraud will not answer the question where

the infant shall be kept. The law does not wait upon these niceties of practice, it does not dally and dawdle, when what is at stake in the contest is the safety of its ward. It leaps to the rescue with the aid of its historic writ.

Holding, as we do, that the pendency of the annulment suit does not constitute a bar, we think the proper course is to remit the proceeding to the Appellate Division to pass judgment on the merits. This it has not done. The order of reversal, interpreted in the light of the opinion, does not mean that the Appellate Division has weighed the findings on the merits, and disapproved them on the law as made without any evidence whatever. If there had been an intention to reverse upon the merits, we cannot doubt, regard being had to the nature of the controversy, that the reversal would have been stated to have been made upon the facts. The complete dismissal of the proceedings points us to the same conclusion. If the merits had been weighed, the Appellate Division would have discharged the duty imposed upon it so clearly by section 70 of the statute (Domestic Relations Law; Cons. Laws, ch. 14), and would have awarded the custody to the father or to the mother, or partly to the one and partly to the other, instead of dismissing the proceeding altogether and leaving the right to custody unsettled and in the air. Doubt, if there is any, as to the scope of the adjudication is dispelled when the order is interpreted in the revealing light of the opinion. We do not look to an opinion to override an order, yet we look to it as a guide to construction when the meaning is uncertain. The conclusion, we think, is inescapable that the merits have not yet been determined either one way or the other, and that the controversy may not be held to have been finally disposed of till the gap shall have been filled.

With the case thus remitted to it for a consideration of the merits, the Appellate Division will be free to exercise its large discretionary powers. It will consider

to what extent the findings are in accordance with the preponderating evidence. If it finds that indiscretions are fairly chargeable to the mother, it will consider whether some division of the custody, with appropriate conditions, will give adequate assurance of the welfare of the child. In posing these inquiries we have no thought to suggest the answers. The whole matter is for the Appellate Division and for its independent and unswayed discretion. Because that discretion has not yet been exercised in favor of either of the parties, the order may not stand.

The order should be reversed without costs, and the proceeding remitted to the Appellate Division for a consideration of the merits.

POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur; KELLOGG, J., not sitting.

Ordered accordingly.