SHIRLEY L. SMITH v. HARRY ROBERT SMITH and NANNIE SMITH.

*(February 14, 1946.)*

CAREY, J., sitting.

*D. J. Layton, Jr.,* for petitioner.

*H. Edward Maull, Jr.,* for respondents.

Superior Court for Sussex County, Habeas Corpus, No. 31, February Term, 1946.

CAREY, J.:

This matter was presented to me in vacation pursuant to 4929 *Revised Code of Delaware* 1935 which permits the issuance of a writ of Habeas Corpus by any Judge of the Superior Court when that Court is not in session.

The petition avers that a final decree of divorce was entered in the State of Florida on October 19, 1945 upon application of the father. A certified copy of that decree is attached to and made part of the petition. Included in the decree is the following paragraph:

"That the defendant, Shirley L. Smith, is hereby awarded the care, custody and control of the parties' minor child, to wit: Harry Robert Smith, Jr., with the right reserved to the plaintiff to visit said child and have said child visit with him at reasonable times and intervals".

The petition further avers that in accordance with the terms of the decree and in accordance with a custom that had arisen between the parties, the mother delivered the child to the respondents on January 5, 1945 for a visit which was to last for two or three days. It further avers that,

when the mother called for the child on January 8, the respondents refused to surrender the child to the mother.

Upon the return of the writ on January 17th, counsel for the respondents stated orally that his defense was the fact that the mother is not taking proper care of the child. The petitioner's Attorney suggested that the respondent, Harry Robert Smith, should not be permitted to raise this defense since he was bound by the Florida decree which has never been altered or amended. It was contended that he had no legal right forcibly to detain the child in view of the decree and that the only way for him to raise this issue was to bring his own action of Habeas Corpus or to institute proceedings in the Juvenile Court.

It seems to me that the point of law involved here must be considered from two separate angles:

(1) Is the Florida decree awarding custody res judicata or, in other words, must we give full force and effect to that decree under all circumstances; and

(2) Is the husband bound or estopped by the Florida decree from raising the particular issue of fact mentioned above?

I have no doubt concerning the right of a Delaware Court to re-examine all the facts and circumstances which may properly be considered in awarding custody of a child when the child is actually living within the borders of this State, even though the Court of another State has previously entered a decree for custody of the child. As stated in 39 *Am.Jur.* 614, "unless new facts are shown to exist, the previous decision of a competent Court with respect to the custody of a child will ordinarily be regarded as res judicata, although not where the circumstances have changed since the entry of the original decree, or where, even though there has been no material change of circum-

stances, the welfare of the child requires a change of custody. * * * In general, these rules apply with equal force to foreign judgments. However, such judgments apparently are entitled to full faith and credit only so far as the situation remains the same as it was at the time of the rendition of the decree". The cases seem to be not altogether uniform, some of them going so far as to hold that the foreign decree may be ignored entirely, *Brandon v. Brandon,* 154 *Ga.* 661, 115 *S. E.* 115; *Dunham v. Dunham,* 97 *Conn.* 440, 117 *A.* 504. Other cases indicate that the decree must be given full faith and credit unless there has been a change of facts and conditions. *People ex rel. v. Schaedel,* 340 *Ill.* 560, 173 *N.E.* 172; *Burrowes v. Burrowes,* 64 *App.D.C.* 392, 78 *F.*2d 742. It is not necessary to decide which line of cases should be followed in this instance. It is sufficient for the present to hold that, under either theory, we do have the right to hear the evidence as to facts and circumstances now existing. This right seems to be conceded almost unanimously by the authorities; it is based upon necessity; without it the State would be powerless, under these conditions, to carry out its recognized obligation of protecting the helpless.

■ Failure to care for a child properly justifies the alteration of a former decree. In passing upon the matter, the Court will of course bear in mind the example set for it in the case of *In re Maris,* 7 *Pennewill* 242, 63 *A.* 197, wherein the Court observed that an infant of tender years "calls especially for the sympathy, care, and teaching of a mother". It will also bear in mind that "proper care" is a relative term and that each case must be decided upon its own merits.

In discussing the foregoing question, I have assumed, without deciding, that the Florida Court had jurisdiction of

all the parties at the time its decree was entered and that the decree was valid in every respect.

 I likewise have no hesitancy in holding that the father is not barred or estopped by the Florida decree from raising the defense set forth herein, even though, in one sense of the word, he may be taking advantage of his own wrong.

 It is elementary that, in all cases dealing with the custody of children, the good of the child is the primary or leading consideration. This principle was laid down in Delaware in *State v. Bratton*, 15 *Am.Law Register* 359. It was tacitly followed in the Maris case, supra. The very right of a State to regulate the custody of infants is founded in the social theory that protection is due the incompetent and helpless. See *Finlay, v. Finlay*, 240 *N. Y.* 429, 148 *N. E.* 624, 40 *A.L.R.* 937. A Court "is not bound by any mere legal right of parent or guardian, but is to give his or her claim to the custody of the child due weight as a claim founded on human nature and generally equitable and just. * * *. The child's welfare is the supreme consideration, irrespective of the rights and wrongs of its contending parents, although the natural rights of the parents are entitled to due consideration". 25 *Am.Jur.* 205. "The conclusion is unthinkable that a child subject to immoral influences must be left in the corrupting custody while father and mother debate their private grievances". *People ex rel. McCanliss v. McCanliss*, 255 *N.Y.* 456, 175 *N.E.* 129, 130, 82 *A.L.R.* 1141.

Applying these basic principles, the Supreme Court of Pennsylvania, in Commonwealth *ex rel. v. Daven*, 298 *Pa.* 416, 148 *A.* 524, permitted a mother to present evidence as to present conditions and considered the case upon its merits, even though the mother had secretly taken her chil-

dren to Pennsylvania from North Carolina in express violation of a North Carolina decree prohibiting her from doing so. The New Hampshire Supreme Court did the same thing in *Sheehy v. Sheehy*, 88 *N.H.* 223, 186 *A.* 1, 107 *A.L.R.* 635, under similar circumstances.

 The petitioner's argument, in its final analysis, is really based upon the assumption that the parents have some sort of property right in the possession of their children. This is not true. A child is not property. Indeed, many examples can be found where Courts have taken the custody of children entirely away from the parents against their wishes and consent. Ordinarily a man should not be permitted to take advantage of his own wrong-doing, but this principle must not be allowed to interfere with the basic rule that the child's welfare is the primary consideration in any case involving its custody. A Court cannot determine what is best for the child without hearing all the pertinent facts and testimony concerning present conditions.

In hearing and deciding this case, I will be governed by the foregoing principles and will enter such order as I deem most advantageous for the child's future welfare.