Meyer, J.
(dissenting). Although recognizing that the Federal courts generally have applied the doctrine of collateral estoppel to bar the reintroduction of evidentiary facts necessarily decided in a defendant’s favor in an earlier criminal prosecution (majority opn, at pp 39-40) and that the rationale of those decisions is consistent both with fairness and with the expansive view of double jeopardy embodied in our statutes (at p 40), the majority stops short of adopting the "evidentiary fact rule” as the law in New York because of its conclusion *44 that the rule’s "application would not require reversal of defendant’s conviction.” (At p 40.) With that conclusion, however, I respectfully disagree. In reaching its contrary conclusion, the majority concedes, at least implicitly, that the first jury necessarily decided not only that defendant did not murder Elodie Henschel, but also that he possessed no weapon and employed no physical force against Mrs. Henschel or her premises; indeed, that conclusion is consistent with the majority’s determination, with which I do agree, that the first jury necessarily decided that defendant must have stolen the rings from Mrs. Henschel during his 20-minute absence from Carpenter’s car (majority opn, at p 41) after Mrs. Henschel had already been beaten to death (ibid., at p 42). Nonetheless, the majority holds that the doctrine of collateral estoppel, even as applied to evidentiary facts, does not bar the admissibility of evidence that defendant intended to kill Mrs. Henschel, that she was beaten to death and found dead, lying in her blood, and that defendant was seen upon his return to the car with blood on his hands and clothing, reasoning that such evidence is relevant as proof of larceny and that the Trial Judge committed no error in ruling that its prejudicial impact is outweighed by its probative value. Such evidence, however, "if believed, would necessarily lead to the conclusion” that defendant participated in the murder of which he was acquitted and, therefore, its admissibility is barred by the doctrine of collateral estoppel (United States v Kramer, 289 F2d 909, 918). At the very least, its marginal relevance as proof of larceny is so clearly outweighed by its prejudicial impact as tending to implicate defendant in the murder of Mrs. Henschel that its admission into evidence was an abuse of discretion as a matter of law. Respectfully, therefore, I dissent.
I
The rule that collateral estoppel bars the reintroduction of evidentiary facts necessarily decided in the defendant’s favor in a prior criminal prosecution has gained wide acceptance in the Federal courts. The rule was originally placed on a common-law basis (see, e.g., Green v United States, 426 F2d 661; United States v Kramer, 289 F2d 909, 916 [2d Cir], supra; United States v Simon, 225 F2d 260, 262 [3d Cir]). Judge Friendly’s opinion in Kramer states with great cogency why in fairness these courts properly refused to limit collateral estoppel to those cases where the fact necessarily decided in the *45 defendant’s favor at the first prosecution is an "ultimate fact.” The Government in Kramer had convicted the defendant of conspiracy to burglarize two Connecticut post offices and to receive stolen postal property, and of the knowing receipt of such property, following the defendant’s acquittal on charges of burglary and larceny arising from the same two events. In reversing the conviction, Judge Friendly reasoned (at p 916): "On the Government’s argument, if a postal inspector had been killed during one of the burglaries, Kramer’s acquittal would bar, as res judicata, a later prosecution for first-degree murder under 18 U.S.C. § 1114, since participation in a burglary would be an essential element of the crime, 18 U.S.C. § 1111; but, in a prosecution for second-degree murder or for manslaughter, the Government would be free, as it claims a fortiori to be here, to repeat all the testimony about Kramer’s presence on the scene which the Connecticut jury believed, since it would not be essential for the Government to establish burglary in order to convict on the lesser charge. Such a distinction seems utterly captious * * * The very nub of collateral estoppel is to extend res judicata beyond those cases where the prior judgment is a complete bar. The Government is free, within the limits set by the Fifth Amendment, see United States v. Sabella, 2 Cir., 1959, 272 F.2d 206, 211, to charge an acquitted defendant with other crimes claimed to arise from the same or related conduct; but it may not prove the new charge by asserting facts necessarily determined against it on the first trial, no matter how unreasonable the Government may consider that determination to be.” (Emphasis supplied.)
Following the holding of the Supreme Court in Ashe v Swenson (397 US 436, 445) that application of the collateral estoppel doctrine in a criminal case is embodied in the Fifth Amendment guarantee against double jeopardy, the Fifth Circuit in Wingate v Wainwright (464 F2d 209, 215) elevated to constitutional status its prior application of that doctrine to facts which are evidentiary in the second prosecution. It persuasively stated its reasons for doing so as follows (at pp 213-214):
"Certainly where an issue has been determined in a prior prosecution, the state is barred from bringing any subsequent prosecution in which a different determination of that issue is necessary to prove the offense charged. But we are unable to find in either the older cases applying the doctrine of collateral estoppel or the more recent Supreme Court cases any *46 basis for limiting the prohibited relitigation of a previously resolved issue to only those suits where the relitigation is essential for the maintenance of the subsequent lawsuit.
* * *
"We do not perceive any meaningful difference in the quality of 'jeopardy’ to which a defendant is again subjected when the state attempts to prove his guilt by relitigating a settled fact issue which depends upon whether the relitigated issue is one of 'ultimate’ fact or merely an 'evidentiary’ fact in the second prosecution. In both instances the state is attempting to prove the defendant guilty of an offense other than the one of which he was acquitted. In both instances the relitigated proof is offered to prove some element of the second offense. In both instances the defendant is forced to defend again against charges or factual allegations which he overcame in the earlier trial.”
The Second Circuit, in United States v Mespoulede (597 F2d 329, 334-335), soon followed suit by placing its prior decision in Kramer on its proper constitutional footing.
Today, the overwhelming majority of Federal Circuit Courts of Appeal apply the doctrine of collateral estoppel to bar the relitigation of evidentiary facts previously decided in the defendant’s favor, whether as a matter of constitutional or common law (see, as to the former, Pugliese v Perrin, 731 F2d 85, 89 [1st Cir]; United States v Mespoulede, supra [2d Cir]; United States v Mock, 604 F2d 341 [5th Cir]; Albert v Montgomery, 732 F2d 865, 869-870 [11th Cir]; and, as to the latter, United States v Keller, 624 F2d 1154, 1159-1160 [3d Cir]; United States v Head, 697 F2d 1200, 1207 [4th Cir]; United States v Day, 591 F2d 861, 869 [DC Cir]). The Sixth Circuit, although holding in United States v Johnson (697 F2d 735, 740) that collateral estoppel bars the relitigation of factual issues previously decided in the defendant’s favor and with it "the admission of the prior conduct evidence” in the second trial, did not expressly invoke either the Constitution or Federal common law (see also, United States v Powell, 632 F2d 754, 757-758 [9th Cir] [collateral estoppel bars the Government in a conspiracy prosecution from alleging those overt acts of which the defendant was previously acquitted]). And thé Seventh Circuit, though not invoking collateral estoppel, achieves a like degree of fairness by its rule that prior crime evidence loses most of its relevance by reason of an acquittal (United *47 States v Phillips, 401 F2d 301). Only the Eighth Circuit Court of Appeals has flatly declared that "[t]he law in this circuit is that collateral estoppel does not bar relitigation of facts that are evidentiary in the second prosecution” (Flittie v Solem, 751 F2d 967, 972). Such a rule is, however, supported by neither logic nor fairness, for it permits the sovereign to relitigate facts already decided against it in a prior prosecution on the sole ground that the evidentiary use of those facts does not completely bar a second prosecution.
In light of the nearly universal contrary view espoused in the Federal courts, the majority’s hesitation in adopting the "evidentiary fact rule” as the law of this State in criminal cases is disturbing. The more particularly is this so because the rule already finds support in New York’s jurisprudence. It is, of course, the rule in civil cases that — assuming all other requirements of collateral estoppel are met — a "finding essential to the judgment” in the first action will be given evidentiary force in the second action even though not dispositive of "the ultimate legal issue involved” (Hinchey v Sellers, 7 NY2d 287, 293; accord, People ex rel. McCanliss v McCanliss, 255 NY 456, 459-460; see also, e.g., Matter of Guimarles v New York City Bd. of Educ., 68 NY2d 989).[1] That rule has been similarly applied, with the sanction of this court, in a criminal case as well. In People v Dreares (15 AD2d 204, 206-207 [Breitel, J.], affd on opn 11 NY2d 906), the defendant was acquitted in the first prosecution of loitering in a subway station, but was convicted in the second prosecution for assault arising out of his attempt to resist arrest on the loitering charge. In reversing the assault conviction, the Appellate Division reasoned first that "[t]he prior acquittal for loitering, which is not disputed, is determinative that defendant was not guilty of the underlying offense for which he was arrested” (15 AD2d, at p 206, supra). The court next gave that acquittal evidentiary *48 force in the assault prosecution, noting that it established that the arrest was unlawful, thereby entitling the defendant to resist the arrest with reasonable force (ibid.). There being no evidence that defendant had used excessive force so as to render the assault criminal (see, People v Allen, 15 NY2d 558), the conviction was reversed and the information dismissed. Significantly, this court in People v Plevy (52 NY2d 58, 65, n 4) cited People v Dreares (supra) as involving a case "where relitigation of a fact previously resolved in the defendant’s favor would also be constitutionally precluded by the double jeopardy clause” (emphasis supplied). Equally significant, because the defendant’s conviction in Dreares would have been sustained upon the requisite proof that he used excessive force in resisting the arrest (see, e.g., People v Allen, supra; People v Cherry, 307 NY 308), the fact relitigated in Dreares cannot reasonably be deemed an "ultimate fact” under the rubric of Ashe v Swenson (supra).
There is, moreover, as the majority of this court recognized, support for according evidentiary force to facts necessarily decided in the defendant’s favor, even though not determinative of the ultimate issue, in "our statutes extending double jeopardy protection well beyond constitutional requirements, with generally recognized concepts of fairness, and with our stated view that common-law collateral estoppel is generally applicable to criminal proceedings for purposes of conserving the time and resources of the courts and litigants” (majority opn, at p 40 [citations omitted]). These concerns apply with much force here, where defendant’s conviction of larceny rests upon the introduction of "substantially the same evidence” (at p 37) employed by the People in their prior unsuccessful bid to convict defendant of murder and other violent crimes. We should, therefore, delay no longer in pronouncing as the rule in New York that the Constitution prohibits the People from "proving] the new charge by asserting facts necessarily determined against [them] on the first trial, no matter how unreasonable the [People] may consider that determination to be” (United States v Kramer, 289 F2d 909, 916, supra).
II
My disagreement with the majority proves the truth of the observation that "[i]n principle, the law of collateral estoppel is clear; in application, it can be a slippery concept indeed” (United States v Mock, 604 F2d, at p 343, supra). As stated by *49 the Fifth Circuit in Mock (ibid., at p 343), collateral estoppel: "mandates two inquiries: First, what facts were necessarily determined in the first law suit? Second, has the government in a subsequent trial tried to relitigate facts necessarily established against it in the first trial? Facts so established in the first trial may not be used in the second trial either as ultimate or as evidentiary facts.” (Citations omitted.) The majority is in accord with this statement of principles (see, majority opn, at p 40). Where the majority and I disagree, however, is in the answer to the two questions posed in Mock, particularly in respect of the second.
Examination of the record of the first prosecution, "taking into account the pleadings, evidence, charge, and other relevant matter” (Ashe v Swenson, 397 US, at p 444, supra) leads to the conclusion that the first jury necessarily decided that defendant did not murder Elodie Henschel, nor did he possess the tire iron he was alleged to be carrying or employ physical force against Mrs. Henschel or her premises. As noted by the majority, the fact of Mrs. Henschel’s deadly beating was "clearly established” at the first trial (at p 35), there being evidence not only that she was discovered lying face down in her blood, but also that she had sustained a severe blow to the back of her head. Defendant was the only person placed by the People’s evidence at Mrs. Henschel’s apartment during the three-hour time period when, according to the People, the murder must have been committed,[2] and the only question for the jury was whether defendant was her killer. By acquitting defendant on the murder charge, the jury necessarily decided *50 that he was not, the more particularly so in light of the evidence that he would kill her if necessary to obtain the rings.
Nor can the jury’s acquittal on the intentional murder charge be based on a finding that defendant struck a blow to Mrs. Henschel with the intent only to cause her harm, for, in light of the larceny conviction, such a finding would have necessitated a guilty verdict of robbery in the first degree (Penal Law § 160.15 [1]) and of felony murder as well (Penal Law § 125.25 [3]). Moreover, as recognized by the majority, the only plausible explanation for defendant’s acquittal on the charge of burglary in the second degree (Penal Law § 140.25 [1]) would be the jury’s necessary finding that defendant imposed no physical force against Mrs. Henschel or her premises.
Equally important, as the majority also concedes (at p 42), the jury having rejected the People’s theory that defendant beat Mrs. Henschel to death, the only rational explanation for its finding of no consent is that at the time the rings were taken Mrs. Henschel was already dead, or at least in extremis, from the result of a prior beating administered by someone other than defendant.
Notwithstanding that the first jury necessarily decided not only that defendant did not kill or physically assault Mrs. Henschel, but also that he was not even present when the beating was administered, the majority upholds proof of the larceny charge by the admission without limitation of "substantially the same evidence” (majority opn, at p 37) by which the People at the first trial sought to establish defendant’s participation in the murder. In so doing, the majority deprives collateral estoppel of its preclusive effect and leaves defendant to argue only that the evidence of his participation in the murder is inadmissible because unfairly prejudicial to him.
Indeed, the purpose undérlying the application of. collateral estoppel to facts whose role in the second prosecution is an evidentiary one is to spare the defendant the burden of meeting a second time evidence of wrongdoing against which he successfully defended in the prior prosecution, even though defendant stands charged of a different crime. Thus, it has been held that "where the state in an otherwise proper prosecution seeks for any purpose to relitigate an issue which was determined in a prior prosecution of the same parties, the evidence offered for such a relitigation must be excluded from *51 trial and the state must be precluded from asserting that the issue should be determined in any way inconsistent with the prior determination” (Wingate v Wainwright, 464 F2d, at p 215, supra [emphasis supplied]). Although the State’s attempt to relitigate an issue necessarily is clear in those cases where the prosecutor argues to the jury that it should now find in its favor the existence of a fact previously decided against it (see, e.g., United States v Mock, supra [in prosecution for tax evasion, prosecutor argued that the defendant received illicit income from his participation in a marihuana distribution conspiracy despite the defendant’s prior acquittal on the. conspiracy charge]), disclaimers by the prosecution that it does not seek to prove the defendant’s guilt of a prior crime are not, of course, controlling (see, United States v Kramer, 289 F2d, at p 915). Rather, it is enough that, "[considering the matter 'in a practical frame and viewed with an eye to all the circumstances of the proceedings,’ ” the admission of prior crimes evidence places the defendant at risk that the jury will reconsider facts previously decided in defendant’s favor by the prior judgment (see, ibid, [citations omitted]). When, as here, the People seek to establish the defendant’s guilt by "prov[ing] events which were in 'unity of time and place’ ” (United States v Mock, 604 F2d, at p 345) or where, as Judge Friendly put it in Kramer, " 'the core of the prosecutor’s case was in each case the same’ ” (289 F2d, at p 919, supra), the courts have generally held that the resubmission of such proof is invalid under principles of estoppel (see, e.g., United States v Keller, 624 F2d, at p 1160, supra; United States v Day, 591 F2d, at p 869, supra; United States v Mespoulede, 597 F2d, at p 335, supra; United States v Kramer, 289 F2d, at p 919, supra).
Pugliese v Perrin (731 F2d 85, supra) is of especial interest because it illustrates the vitality of these principles when, as here, the jury returns a verdict acquitting the defendant of one count but convicting him of another for crimes arising out of the same transaction. The defendant there was engaged in a street fight with another and upon the trial for the resulting homicide was acquitted of reckless manslaughter but convicted of negligent homicide, the jury having necessarily decided that he did not possess the requisite mental state to commit manslaughter. Upon retrial following a reversal of that conviction, the State employed evidence that defendant, who pleaded self-defense, engaged in purposeful, knowing or reckless conduct as proof of negligence, and succeeded in *52 obtaining a charge to the jury that such proof, if believed, proved negligence beyond a reasonable doubt. Though recognizing the "problem” faced by the State in proving negligence where the defendant claimed awareness of the risk, the First Circuit held that "[tjhis evidentiary gap could not be plugged by proof of purposeful, knowing or reckless conduct which could only be the basis for a conviction of manslaughter of which Pugliese had already been acquitted” (731 F2d, at p 89, supra).
Here, too, the People complain of the potential for evidentiary gaps in their proof, for it is, of course, their burden to prove that defendant took the rings without Mrs. Henschel’s consent. The prosecutor theorized at the first trial that Mrs. Henschel never consented because defendant killed her to obtain the rings, but by acquitting defendant of murder and the related violent crimes, the jury necessarily decided that this was not so. Here, as in Pugliese, the People’s desire to plug a potential evidentiary gap cannot override the constitutionally declared policy of protecting defendant from the burden of relitigating facts previously decided in his favor by permitting the People to reintroduce the identical evidence by which the prosecution previously sought to prove defendant’s participation in the murder.
Because collateral estoppel barred the People from relitigating the questions whether defendant in fact killed Mrs. Henschel or used any force against her or her property in the course of allegedly taking her rings, they were prohibited from introducing "evidence which, if believed, would necessarily lead to the conclusion that” defendant engaged in those acts (United States v Kramer, 289 F2d, at p 918, supra). Evidence that the defendant intended to kill Mrs. Henschel if necessary to effectuate the larceny, that when he returned to the getaway car after committing the crime there was blood on his hands and that Mrs. Henschel was beaten to death and found lying in her blood, if believed, leads inescapably to the conclusion that defendant was guilty of more than larceny, especially in light of the evidence suggesting that the beating occurred at about the time when defendant was in her apartment.[3] Indeed, had the initial jury found sufficient evidence to *53 corroborate these charges, i.e., had they found a basis in law and reason to believe them, there is little doubt that their verdict would have differed.[4] The jury, however, in its wisdom found otherwise and the People cannot now relitigate "facts necessarily determined against it on the first trial, no matter how unreasonable the [People] may consider that determination to be” (United States v Kramer, 289 F2d, at p 916, supra).
Ill
The other crimes evidence was inadmissible as well because, apart from the principles of collateral estoppel, its marginal relevance as proof of larceny was so clearly outweighed by its prejudicial impact in tending to implicate defendant in the murder of Mrs. Henschel that, as a matter of law, it should have been excluded from the People’s proof (People v Ventimiglia, 52 NY2d 350; People v Molineux, 168 NY 264), the more particularly so in light of defendant’s acquittal on the murder charge and related violent crimes (see, People v Schwartzman, 24 NY2d 241, 250 [barring cross-examination of defendant about criminal acts underlying a charge on which he was acquitted]; compare, People v Vidal, 26 NY2d 249, 253 [dismissal is not tantamount to an acquittal, and therefore cross-examination of underlying acts is permissible]). The Molineux rule, of course, proscribes the admission of other crimes evidence if offered for the sole purpose of demonstrating the defendant’s predisposition to commit the crime charged (see, e.g., People v Allweiss, 48 NY2d 40, 46). Even when offered for a proper purpose, however, other crimes evidence is inadmissible when its "probative value 'outweighs its potential for *54 prejudice’ ” (People v Ely, 68 NY2d 520, 529; People v Ventimiglia, 52 NY2d, at p 359, supra; accord, People v McKinney, 24 NY2d 180, 184).
Here, although defendant’s statement that he intended to steal the rings was undoubtedly admissible as relevant proof of his intent to commit larceny, defendant’s additional remark to the effect that he would kill Mrs. Henschel if necessary to accomplish that purpose should have been redacted. To justify its admission as tending to establish "the gravity of’ defendant’s larcenous intent, as the majority here does (at p 43), is to blink the highly inflammatory nature of such proof in a case marked by evidence of the brutal beating of an 83-year-old woman. Nor is the reference to defendant’s willingness to commit murder "inextricably interwoven” with the otherwise admissible portion of the statement because such proof is unnecessary to comprehend the plain meaning of defendant’s admission of his intent to steal (People v Ely, supra; People v Ward, 62 NY2d 816, 818; People v Crandall, 67 NY2d 111, 117).
As for the remaining evidence that Mrs. Henschel was beaten to death and that, when defendant returned to Carpenter’s car, there was blood on his hands and clothing, the majority simply overstates its importance to the issue of consent (majority opn, at p 43). Indeed, there was an ample basis for the jury to find a lack of consent in the testimony of Dennis Martin that the two rings "were engagement rings, one from each of her husbands” and that Mrs. Henschel cherished then so that she "always wore them,” and in like testimony given by her son and daughter-in-law. The defense, moreover, was not that Mrs. Henschel consented, but that defendant did not take the rings, and at neither trial was one shred of evidence introduced to suggest any reason why Mrs. Henschel willingly might have given her treasured and irreplaceable personal effects to defendant. The People’s protestations notwithstanding, their insistence on presenting as proof of the lack of consent the same evidence of defendant’s role in the events of January 23 which they earlier had offered to prove that he committed the murder strongly suggests not only that the People hoped to gain from the obvious prejudice to defendant thereby aroused, but also that they sought to relitigate facts necessarily decided against them at the first trial. Even assuming, arguendo, the relevance to consent of the fact of Mrs. Henschel’s death, that cannot justify the admission of evidence concerning the manner in *55 which she died and of the bloody state, described separately by three witnesses, in which her body was found.
For all of the foregoing reasons, the order of the Appellate Division affirming the judgment of conviction should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone and Hancock, Jr., concur with Judge Simons; Judge Meyer dissents and votes to reverse in a separate opinion. Order affirmed.

.Care should be taken not to confuse the reference to "evidentiary facts” in Hinchey v Sellers (7 NY2d 287, 293) and in People ex rel. McCanliss v McCanliss (255 NY 456, 460) with the reference to the "evidentiary fact rule” discussed in the present case. The reference in the earlier cases is to the rule that fact findings which are not essential to the first judgment are deemed "evidentiary facts” in the first action as to which there is no preclusive effect in the second action (see, Restatement [Second] of Judgments § 27 comment j). The present case involves only the question whether facts essential to the first judgment, or "necessarily decided” by it — sometimes referred to as "ultimate facts” in the first action (ibid.) — are to be given the effect of precluding evidence of the same facts in the second prosecution.

.Dennis Martin, a friend of Mrs. Henschel’s, testified at both the first and second trials that on January 23, 1978 he escorted Mrs. Henschel home from a dentist appointment and left her at her apartment at 11:00 or 11:15 a.m. At 2:00 p.m., his grandmother, Mrs. Henschel’s close friend, began calling Mrs. Henschel’s apartment at half-hour intervals but to no avail. Martin’s grandmother resumed making those calls at 11:00 the following morning, without success. Later that evening, at about 6:00 p.m., Mrs. Henschel was found dead, lying face down in her blood, according to the testimony of the apartment building supervisor given at both trials. It was the People’s theory at both trials, as advanced by the prosecutor in summation, that the "crime” with which defendant was charged "occurred sometime between 11:30 on the 23rd and 2:00 p.m., or thereabouts, sometime in that period, because that is when Mrs. Henschel can no longer answer her phone.” The prosecutor further argued that defendant revealed his own consciousness of guilt when on January 24, 1978, he told police that he had seen three suspicious men in the area of Mrs. Henschel’s apartment on the previous day. The prosecutor asserted that only the perpetrator would have known that "something happened” to Mrs. Henschel on the previous day.

.Although the prosecutor did not ask the jury to conclude that defendant had beaten Mrs. Henschel to death, even he could not avoid the obvious implication of the People’s proof that Mrs. Henschel was the victim on January 23,1978 of one criminal event. Thus, he argued to the jury that *53 when on January 24, Detective Smith discovered the crime scene, "[t]he police don’t know that the crime occurred the previous day * * * They don’t know they have just opened the door and found the crime scene. They don’t know when it happened” (emphasis supplied). The prosecutor further argued that defendant, who told police that he had seen three suspicious men in the area the previous day, could only have known that "something happened” to Mrs. Henschel and that "it happened” to her on January 23, and not January 24, because defendant necessarily participated in the crime to which he referred, that being, as the above quotations show, the crime that resulted in her death.

.There is neither logic nor fairness in the majority’s contention (at pp 42-43) that the People’s failure at the first trial to corroborate the testimony that defendant was the killer permits the People at the second trial to relitigate defendant’s alleged participation in the murder through the reintroduction of the same proof. Moreover, United States v Woods (484 F2d 127, 138) may be distinguished as involving a legal ruling by a Trial Judge rather than a fact determination by a jury.