# State of New York
# Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 60
In the Matter of Celinette H.H.,
      Appellant,
    v.
Michelle R. et al.,
      Respondents.

Carol Kahn, for appellant.
Philip Katz, attorney for the children.
Geoffrey P. Berman, for respondent Willie R.

MEMORANDUM:

So much of the Appellate Division order as granted respondent Michelle R.'s cross-motion to dismiss petitioner Celinette H.H.'s appeal to that Court reversed, without costs, and matter remitted to the Appellate Division for further proceedings in accordance with

- 1 -

this memorandum; appeal otherwise dismissed upon the ground that the remaining portion of the order appealed from does not finally determine a proceeding within the meaning of the Constitution.

Family Court signed writs of habeas corpus and held a hearing upon inquest on the mother's applications seeking sole custody of the children and for their immediate return. After inquest, Family Court denied the mother's applications both for sole custody and habeas corpus relief. As the parties who have appeared before us agree, the Appellate Division erred in dismissing the mother's ensuing appeal for lack of subject matter jurisdiction. By dismissing the appeal upon a motion, and upon an undeveloped record, without full briefing and without providing all parties the opportunity to appear, the Appellate Division has rendered impossible meaningful appellate review of the weighty issues raised in this case. To the extent that the Appellate Division's order on the motion to dismiss could be read, as the dissenters read it, to be a determination that the mother lacked standing to seek habeas corpus relief without an order of custody in place, the issue of standing did not impact the subject matter jurisdiction of the Appellate Division (*see Lacks v Lacks*, 41 NY2d 71, 74 [1976]). Regardless of whether that Court had the "power to reach the merits," an issue on which we express no opinion, the Court did not lack the "competence to entertain" the appeal (*id.* at 75). Therefore, we remit to the Appellate Division for an expeditious determination on the merits of the standing question presented herein and, if warranted, disposition of any other issues that the parties may raise.[1]

---

[1] We note that, according to the mother's attorney, two of the children have returned to New York and the third child remains in South Carolina. The attorney for the child and

the father's attorney have stated at various points that the third child continues to reside in South Carolina with her father or that her location is unknown.

RIVERA, J. (dissenting):

Petitioner is the mother of three minor children, a daughter and twins who have lived with her since their birth. During a visit with father, who resides out of state, father refused to return the children. Although two are now back home with mother, father has not returned one of the twins and we do not know the child's status since father has not

facilitated their contact with the Attorney for the Child ("AFC"). Both Family Court and the Appellate Division rejected mother's application for a writ of habeas corpus because mother did not have a preexisting custody order. That was error. Family Court has jurisdiction to determine custody in habeas corpus proceedings (Family Court Act ["FCA"] § 651 [b]), and section 70 (a) of the Domestic Relations Law ("DRL") allows a parent to apply for habeas relief for their minor child and authorizes the court to award custody, based on "the best interest of the child, and what will best promote [the child's] welfare and happiness" (DRL § 70 [a]).

Mother has waited over two years for a determination on her request for the child's safe return to her home, which is now further delayed by the majority's non-merits remittal to the Appellate Division to correct a procedural mislabel and "entertain" mother's appeal to that court (majority mem at 2). But, "the law does not wait upon these niceties of practice, it does not dally and dawdle, when what is at stake in the contest is the safety of its ward. It leaps to the rescue with the aid of its historic writ" (*People ex rel. McCanliss v McCanliss*, 255 NY 456, 462 [1931] [Cardozo, Ch. J.]. I would reverse and remit to Family Court to reinstate mother's petition for the writ and adjudicate the issue of custody, without further delay.

I.

Prior to commencement of the underlying proceeding, the children lived for years with mother in New York City. At the time, paternal grandmother had rights of visitation pursuant to a so-ordered stipulation, which required that she pick up and return the children

to mother's residence. In April 2020, mother consented for grandmother to take the children to visit father where he was residing in South Carolina. When grandmother failed to bring them back to mother's residence, mother, acting pro se, filed for a writ of habeas corpus in Family Court against grandmother and father to compel the children's return. By then, it was the height of the pandemic in the City and the New York Court System had instituted a moratorium on all "new nonessential matters," including custody petitions (*see* Administrative Order [Apr 8, 2020], *available at* https://www.nycourts.gov/ whatsnew/pdf/AO-85-20.pdf [last accessed Sept 28, 2023]).[1]

Family Court issued the writ—which was renewed several times during the course of the ongoing proceeding—but the children were not brought before the court. At a virtual appearance in October 2020, father appeared by telephone without counsel. Family Court stated that an order of custody in favor of mother was in place,[2] advised father that he was in violation, and informed him that grandmother must return the children. Grandmother also appeared and stated she was willing but lacked funds to travel out of state to retrieve the children. Father hung up in the middle of the proceeding. During this virtual proceeding, the court issued warrants for father and grandmother for contempt. At a November 2020 appearance, assigned counsel appeared for father but stated he had not been able to contact him. In response to counsel's assertion that mother had no order

---

[1] The moratorium was lifted on June 25, 2021.

[2] The record is unclear whether the court was referring to the order of visitation or to a temporary order of custody.

granting her custody, Family Court issued a temporary order of custody in her favor.[3] Family Court vacated grandmother's warrant after she was incarcerated for seven days.

At a July 2021 inquest on the habeas petition, mother and her counsel appeared, as did father's counsel, although father's counsel chose to remain silent. Family Court noted that there was no custody petition before it. Thereafter, a referee denied the writ, dismissed the proceeding without prejudice to mother filing a custody petition, and vacated the temporary custody order on the grounds that mother never petitioned for custody and so the case was "not properly before th[e] court."[4]

Mother appealed and moved for the Appellate Division to take judicial notice of the stipulation granting visitation to grandmother. Grandmother cross-moved to dismiss on the ground that mother lacked standing to seek habeas relief without a preexisting custody order. The Appellate Division summarily ordered that mother's motion be "denied in its entirety" and that grandmother's cross-motion be "granted and the appeal dismissed" (2022 NY Slip Op 62277[U] [1st Dept 2022]). We granted mother leave to appeal (38 NY3d 1164 [2022]).

Rather than address whether a preexisting order of custody is necessary before a parent may seek habeas relief in Family Court, the majority remits to the Appellate

---

[3] The record is unclear as to whether this was the first such order issued during the habeas proceeding.

[4] Mother represented in her motion for leave to appeal to this Court that, in accordance with the referee's instructions, she filed a custody petition, and the petition was dismissed in March 2022 because of her inability to serve father, and that her appeal from that dismissal was pending (*see* Mot. for Leave at 4).

Division to determine mother's standing and to order such other disposition as warranted (*see* majority mem at 2). There is no basis to further delay a determination on the merits by remitting to the Appellate Division merely to restate the obvious: the Court granted grandmother's cross motion on the sole ground presented, that mother could not proceed by habeas if there was no preexisting order of custody. The Family Court referee dismissed mother's petition on the same legal basis, the propriety of that reasoning was before the Appellate Division, and it is now squarely presented to this Court. I now turn to that issue.

## II.

Mother claims that dismissal was error. She argues, in relevant part, that she is entitled to custody based on: (1) the children's having lived with mother in New York City for years and for the six months before she sought the writ; and (2) the so-ordered stipulation that required grandmother return the children to mother's residence. In response to these claims, father argues that a parent cannot seek a writ of habeas corpus without an existing custody order and that Family Court did not abuse its discretion in declining to convert mother's application for the writ to a custody petition.[5] The AFC argues, in part, that Family Court abused its discretion in dismissing the writ because the law authorizes

---

[5] Father does not assert any other ground for lack of standing or Family Court's subject-matter jurisdiction over mother's habeas petition.

the court to adjudicate custody on the writ petition itself. According to the AFC, it was therefore error as a matter of law for the court below to judicially impose such requirement.

The sole question presented is whether a parent may apply for habeas relief without an existing custody order. The answer is in the governing statutory provisions. Section 70 (a) of the DRL states, in relevant part, that "either parent may apply to the supreme court for a writ of habeas corpus to have [a] minor child brought before such court" and "on the return thereof, the . . . court may award . . . custody of such child" (DRL § 70 [a]). The statute further provides that, "[i]n all such cases there shall be no prima facie right to the custody of the child in either parent, but the court shall determine solely what is for the best interest of the child, and what will best promote [the child's] welfare and happiness, and make award accordingly (*id.* § 70 [a]). Section 651 of the FCA provides, in relevant part, that "[w]hen initiated in the family court, the family court has jurisdiction to determine, in accordance with . . . the same powers possessed by the supreme court in addition to its own powers, habeas corpus proceedings for the determination of the custody . . . of minors" (FCA § 651 [b]).[6] The statutory framework thus does not require an existing custody order for a parent to seek a writ of habeas corpus or for Family Court to award custody to either parent in the proceeding.

---

[6] The statute also vests Family Court with jurisdiction to determine such matters "in accordance with [DRL § 240]" (FCA § 651 [b]). Section 240 of the Domestic Relations Law is archaic in that it covers only "action[s] or proceeding[s] brought . . . to obtain, by a writ of habeas corpus . . . the custody of . . . any child of a marriage" (DRL § 240 [1] [a]). This remnant of the past, which appears nowhere in DRL § 70, is a doctrinally and socially irrelevant distinction for purposes of these habeas proceedings and an anomaly easily addressed by legislative amendment.

Section 70 of the DRL is a codification of the common law writ, which was the mechanism by which any party could request, and a court could order, production of a person unlawfully detained (*see Matter of Nonhuman Rights Project, Inc. v Breheny*, 38 NY3d 555, 569 [2022]). The writ is enshrined in the New York Constitution (*see* NY Const, art I, § 4; *Nonhuman Rights Project*, 38 NY3d at 569), and thus " 'cannot be abrogated, or its efficiency curtailed, by legislative action,' except in certain emergency situations" (*People ex rel. DeLia v Munsey*, 26 NY3d 124, 130 [2015], quoting *People ex rel. Tweed v Liscomb*, 60 NY 559, 565 [1875]). "In time, . . . it was extended to controversies touching the custody of children, which were governed, not so much by considerations of strictly legal rights, as by those of expediency and equity and, above all, the interests of the child" (*People ex rel. Riesner v New York Nursery and Child's Hosp.*, 230 NY 119, 124 [1920] [Cardozo, J.]; *see Matter of Standish*, 197 AD 176, 180-181 [2d Dept 1921], *affd* 233 NY 689 [1922]). Indeed, "the ultimate fact to be determined" on return of a writ of habeas corpus in the child custody context "is the apportionment of custody between the" parents (*McCanliss*, 255 NY at 460; *Matter of Garcia v Ramos*, 79 AD3d 872, 873 [2d Dept 2010] ["The purpose of a writ of habeas corpus is to require production of a child in court so that the court, after 'due consideration,' may make a determination as to custody"]). Consequently, while proceedings for a writ of habeas corpus are generally predicated on an illegal detention, DRL 70 is not grounded on a parent's extant legal right to custody and instead mandates an award *solely* on the best interests of the child.

Moreover, Family Court has broad authority to resolve the parties' dispute, including issuing the writ and awarding custody or converting the writ to a petition for custody, with or without necessitating the child's appearance in court (*see* CPLR 103 [c] [providing that "a civil judicial proceeding *shall not be dismissed* solely because it is not brought in the proper form] [emphasis added]; *People ex rel. Satti v Satti*, 55 AD2d 149, 151-152 [1st Dept 1976] *affd* 43 NY2d 671 [1977] [observing that, given CPLR 103 (c)'s command, "the fact that a proceeding is, in form, brought as habeas corpus does not prevent the court from exercising its equity powers as if the proceeding had been instituted by petition in equity"]; *see also* Alan D. Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Domestic Relations Law C70:3 ["DRL § 70, on its face, permits 'either parent' to apply for the writ and for the court to grant custody to 'either parent'. The statute, thus, expressly authorizes the use of habeas corpus proceedings to decide custody disputes between parents"]).

## III.

The Appellate Division case law upon which father relies for the argument that mother cannot apply for the writ without a standing custody order because Family Court would have no authority to order relief in such case is unpersuasive.[7] In *Matter of Kiara B. v Omar R.*, the Appellate Division concluded without analysis that, under DRL § 70, Family Court properly denied the mother's habeas petition because "there was no custody

---

[7] Father does not argue that the custody order must be one in favor of the relator parent, but that seems the logical import of his argument and the Appellate Division case law given that court's focus on the parents' equal rights to custody absent such order.

order in place and the mother had no greater right to custody than the father" and thus "the child was not illegally detained" (147 AD3d 476 [1st Dept 2017]). As I discuss, illegal detention is not a precondition for habeas relief in this context, and there is no textual support for a preexisting custody order requirement.[8] Nor is it relevant, as the *Kiara B.* court presupposes, that, absent an order to the contrary, parents have equal rights to custody of their minor child. Section 70 (a) of the DRL expressly provides that "[i]n all cases there shall be no prima facie right to custody of the child in either parent" (DRL § 70 [a]).

*Kiara B.* is also distinguishable because a custody petition was pending in that case and, as the court emphasized, the mother could seek to expedite or move for temporary custody (147 AD3d at 476). Whereas the mother in *Kiara B.* had alternative procedural pathways to a custody award, here, due to the COVID moratorium, mother could not seek custody when she petitioned pro se for a writ of habeas corpus which, after being left pending for months was dismissed without the failsafe of an existing custody petition (*see id.*). But the fact that a parent can file for custody does not nullify their right to seek the writ or diminish the authority of Family Court to award custody in a habeas proceeding. As this Court recognized over a century ago, even if another remedy is available, a parent is "entitled to test without delay [by writ of habeas corpus] the propriety of a custody which was still subject to a better right" (*People ex rel. Riesner,* 230 NY at 124).

---

[8] One New York family law treatise does not even read *Kiara B.* as imposing a predicate order requirement on a habeas writ (*see* Joel R. Brandes, 7 Law and the Family New York § 66:35 n 18, Habeas Corpus Proceedings, Generally [2023 ed]; *see also* Gary Muldoon, Handling a Family Law Case in New York § 7.1, at 235 [2023 ed] [recognizing that habeas corpus brought by a parent is a "method of obtaining custody or visitation"]).

The Family Court's directive to file a custody petition here was unnecessary as the court could have converted the writ. But in any case, it also proved to be an illusory attempt at relief. The petition for custody was also dismissed—for failure to serve father, who unceremoniously hung up on the Family Court judge during the habeas proceeding, ignored the court's orders, and who fails to facilitate the AFC's contact with the child, despite the AFC's efforts and this appeal.

*Toussaint v Doucey*, is similarly unhelpful to father because *Toussaint* cited *Kiara B.* without independent analysis for the same proposition that, "[a]s there was no other custody order in place, and the [petitioner] father had no greater right to the custody of the children than the mother, the children were not being illegally detained by the mother" (199 AD3d 693 [2d Dept 2021]). And still, the Appellate Division there reviewed the record and applied a best interest of the child analysis to uphold Family Court's dismissal of the father's habeas petition, explaining that "the children and the mother were all born in France, and the mother's temporary move to France with the children was prompted by challenges created by the global COVID-19 pandemic and was undertaken to provide the children with a healthier environment in which to thrive" (*id.*). In contrast, here, no court has determined what would be in the best interest of the child and, unlike the mother in *Toussaint*, there is no parental agreement that the children would reside with father. There is, however, a so-ordered stipulation recognizing the children's residence with the mother.

IV.

When a parent applies for a writ of habeas corpus under DRL § 70 (a), the court may—in a proceeding where neither parent has "a prima facie right to [ ] custody"—grant the writ, order the minor child brought before the court, and determine whether to grant custody based on the best interest of the child (DRL § 70 [a]; *see Garcia*, 79 AD3d at 873). Under its broad authority, the court may, although need not, convert the writ to a custody petition (*see* CPLR 103 [c]; *Satti*, 55 AD2d at 151-152). But it may not deny the writ outright and dismiss the proceeding just because there is no prior custody order in place. This judicially-imposed prerequisite has no statutory or common-law basis and is contrary to the broad powers of the Family Court to resolve custody matters.

This extra-statutory requirement also results in additional work for an overburdened and under-resourced Family Court (*see* Franklin H. Williams Judicial Commission of the New York State Courts, *Report on New York City Family Courts* [Jan 2022], *available at* https://www.nycourts.gov/LegacyPDFS/IP/ethnic-fairness/pdfs/FHW%20-%20Report%20on%20the%20NYC%20Family%20Courts%20-%20Final%20Report.pdf [last accessed Oct 12, 2023] [concluding that "Family Courts are currently in crisis, which negatively impacts families, particularly children, who are the most vulnerable"]; Jeh Johnson, Report from the Special Adviser on Equal Justice in the New York Courts [Oct 2020] at 54, 57, *available at* https://www.nycourts.gov/whatsnew/pdf/SpecialAdviserEqualJusticeReport.pdf [last accessed Oct 12, 2023] [describing a "second-class system of justice for people of color in New York State" who encounter "crumbling," high-volume courts and noting,

among other things, that, according to one attorney, "litigants in Family Court feel so disheartened by persistent delays that they eventually fail to appear at all"]).

This case is a prime example. Mother's habeas petition was on the Family Court docket for almost a year during the COVID-19 pandemic (*see* The New York City Family Court COVID Work Group, *The Impact of COVID-19 on the New York City Family Court: Recommendations on Improving Access to Justice for All Litigants* (Jan. 2022) at 4, 28 [observing that, during the pandemic, Family Court's suspension of all matters except those it deemed "essential . . . caused harm to thousands of families" and that the ensuing "backlog includes cases that were filed pre-March 2020"], *available at* http://moderncourts.org/wp-content/uploads/2022/02/NY-Family-Court-Report-1-22-2022.pdf [last accessed Oct 12, 2023]). During that time, Family Court issued the writ, which father disregarded. There were several appearances, adjournments, at least one temporary custody order in mother's favor, contempt warrants issued against father and grandmother, and grandmother was incarcerated—all while the children remained separated from mother and one-another, twin from twin, sister from brother—before Family Court determined that the lack of a custody order prohibited the court from proceeding further and dismissed the writ so mother could file a custody petition. Even now, no counsel can confirm the location of the child, not even the child's attorney who relies for updates on the two siblings who have been reunited with mother. Section 70 (a) of the DRL is intended to avoid this needless delay when a child is alleged to be illegally detained and to facilitate expeditious determination of parental custody.

We should not add to the challenges faced by parents, many who, like mother here, initiate actions pro se and turn to the courts for help in reuniting with their children. No parent—or child—should go through this.

I dissent.

So much of the Appellate Division order as granted respondent Michelle R.'s cross-motion to dismiss petitioner Celinette H.H.'s appeal to that Court reversed, without costs, and matter remitted to the Appellate Division, First Department, for further proceedings in accordance with the memorandum herein; appeal otherwise dismissed upon the ground that the remaining portion of the order appealed from does not finally determine a proceeding within the meaning of the Constitution. Judges Garcia, Singas, Cannataro and Halligan concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson and Judge Troutman concur.

Decided October 19, 2023